THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

John Doe #49,

    Plaintiff

v.                                                      Case No.:  5:21-cv-00227

The United States of America,

    Defendant

## COMPLAINT

COMES NOW Plaintiff John Doe #49, by undersigned counsel, and for his Complaint in this civil action states as follows:

### PARTIES

1. Plaintiff John Doe #49 is a resident of Mercer County, West Virginia.

2. The Defendant United States of America, through the United States Veterans Health Administration and the United States Department of Veterans Affairs ("VA"), at all times alleged herein is the federal governing body responsible for funding, operating, administering, controlling, supervising, and managing the business and employment affairs, and implementing the healthcare program of the VA available to eligible military veterans. Beckley VAMC located in Beckley, West Virginia, is one of the many VA Medical Centers operated by the United States of America through the United States Veterans Health Administration and the United States Department of Veterans Affairs ("VA").

3. John Doe #49 has complied in all manners with the notice requirements set forth in the Medical Professional Liability Act, contained within West Virginia Code §55-7B-6.

4. This Court has jurisdiction pursuant to 28 U.S.C. §1346(b). Pursuant to 28 U.S.C. §1391(e), venue is proper in the Judicial District where a substantial number of the events involved

occurred or where the John Doe #49 resides, if there is no real property at issue. All the acts and omissions which give rise to the claims occurred in Beckley, Raleigh County, West Virginia.

5. At all times relevant hereto, Jonathan Yates was a doctor of osteopathic medicine employed and/or credentialed at the Beckley VA Medical Center ["Beckley VAMC"].

6. John Doe #49's cause of action arises under the Federal Tort Claims Act of 1948, 28 U.S.C. §§1346(b), 2671, *et seq.*, 38 U.S.C. §7316(a) and (f), West Virginia Code §§55-7B-1, *et seq.*, and West Virginia Code §55-7-6.

7. Jurisdiction and venue are proper in the United States District Court for the Southern District of West Virginia.

8. John Doe #49 has complied in all manners with the notice requirements of the Federal Tort Claims Act.

9. Upon information and belief, the Beckley VAMC and the United States of America were the employers of Dr. Jonathan Yates at all times relevant hereto and are vicariously liable for the acts and/or failures as set forth herein.

10. The United States of America is legally liable for the medical negligence of its employed physicians. Defendant is liable for the violations of non-discretionary rules, directives, and protocols by Dr. Yates, and his Whole Health Team, and other administrators of the VAMC, which were a cause of the damages suffered by John Doe #49.

## FACTS

1. Upon information and belief, John Doe #49 served in the United States Army. John Doe #49 enlisted in the United States Army on October 14, 2008 and served until February 9, 2011, at which time he was honorably discharged for completion of service.

2. It was this service that allowed John Doe #49 to receive medical treatment at the Beckley VAMC.

3. Beckley VAMC offers its services to more than thirty-eight thousand veterans living in an eleven-county area in Southern West Virginia.

4. More than twelve-thousand veterans are enrolled in the Beckley VAMC health care system.

5. Beckley VAMC holds itself out as an institution that "has been improving the health of the men and women who have so proudly served our nation" since 1951.

6. Beckley VAMC's stated vision is "[t]o be a trusted, resilient partner for Veterans, offering readily available, safe and compassionate care of exceptional quality within an integrated system."

7. Beckley VAMC touts its core values as being integrity, commitment, advocacy, respect, and excellence.

8. Every veteran that receives healthcare from the Beckley VAMC and its providers is deserving of the compassionate care of excellent quality touted by the Beckley VAMC's vision statement.

9. Every veteran that receives healthcare from the Beckley VAMC and its providers is deserving of the integrity, commitment, advocacy, respect, and excellence that the Beckley VAMC alleges are its core values.

10. In July of 2018, Beckley VAMC began offering health and wellness services through a new program titled "Whole Health."

11. According to the Beckley VAMC web page "Whole Health (WH) is an approach to health care that empowers and equips everyone to take charge of their health and well-being and to live their life to the fullest."[1]

12. Whole Health was intended to incorporate components of proactive health and well-being for Veterans.

13. Dr. Jonathan Yates was hired and/or credentialed by the Beckley VAMC to provide healthcare to Veterans through the Whole Health Program.

14. Upon information and belief, John Doe #49 presented to Dr. Yates on December 7, 2018 and March 6, 2019 for back pain/slipped disc.

15. On December 7, 2018, upon entering the examination room, Dr. Yates informed John Doe #49 to undress to his boxer briefs, which struck John Doe #49 as being odd, as he was never asked to undress during his prior examinations with other physicians.

16. On December 7, 2018, Dr. Yates began tugging and massaging John Doe #49 and then requested that he remove his boxer briefs. John Doe #49 resisted at first; however, Dr. Yates insisted that the clothing had to be removed in order to access the pain region.

17. After requesting that John Doe #49 totally remove his boxer briefs, Dr. Yates grabbed the penis of Mr. Doe. Dr. Yates tugged at the penis of John Doe #49 and then proceeded to pry around the perineum, pressing very had and causing pain to Mr. Doe. John Doe #49 pulled away, almost penetrating his anus.

18. John Doe #49 questioned Dr. Yates about the procedure regarding the perineum, which Dr. Yates had a very difficult time explaining the reasoning behind the procedure. John

---

[1] https://www.beckley.va.gov/services/Whole_Health.asp

Doe #49 told Dr. Yates that he could not understand how the method in question would help his pain.

19. After completion of the December 7, 2018, John Doe #49 told his wife about the procedure, confusing her as well.

20. On March 6, 2019, John Doe #49 presented to Dr. Yates for his second and final appointment. John Doe #49 was of the belief that he had blocked the December 7, 2018 appointment from his memory until he remembered the events upon Dr. Yates' entry into the examination room. The chief complaint which John Doe #49 presented at this appointment was for spasms.

21. During the March 6, 2019 appointment, Dr. Yates removed John Doe #49's boxers to his ankles and laid his face up on the examination table.

22. John Doe #49 states that Dr. Yates digitally penetrated the anus of John Doe #49 and touched his prostate to arouse him. John Doe #49 immediately jerked away and pulled up his boxer briefs.

23. John Doe #49 exited the examination room and never returned for another visit with Dr. Yates.

24. Dr. Yates started the examination without an executed consent by John Doe #49.

25. Dr. Yates would also divulge personal information about himself and his family to patients prior to and during examinations.

26. The examinations performed by Dr. Yates were carried out without any respect for patients' modesty.

27. On multiple occasions, Dr. Yates did not provide explanations of the osteopathic manipulative treatments being performed.

28. Dr. Yates treated John Doe #49 and others without the presence of a chaperone for sensitive examinations.

29. During treatments, Dr. Yates would commonly express a need to examine patients' genitals, groin area, or rectal area, despite claims of pain in their neck, back, leg, or other non-private area of the body.

30. Dr. Yates would routinely unnecessarily digitally penetrate patients' rectums and/or probe their genital areas without any medical explanation or consent, causing pain, embarrassment, confusion, and frustration.

31. Dr. Yates would make inaccurate entries into patients' medical records of complaints that were never made by the patients to justify examination of the private or rectal area.

32. Several patients reported the actions of Dr. Yates to their mental health counselors and/or other physicians at the Beckley VAMC.

33. Dr. Yates' behavior was further reported to Director of the Beckley VAMC, Stacy Vasquez.

34. Dr. Yates' behavior was further reported through the online complaint form available to patients.

35. Due to inaction by the Beckley VAMC, one patient reported the occurrences of malpractice to the news media.

36. On December 30, 2020, John Doe #49 submitted an administrative claim Form-SF95 to the Department of Veterans Affairs. On March 31, 2021, the U.S. Department of Veterans Affairs sent John Doe #49, through counsel, a letter denying the administrative claim. More than six months have passed since John Doe #49's submission of the administrative claim and no

acceptance or payment of the claim has occurred. John Doe #49 deems the lack of response, acceptance, or payment of the claim to be a denial under 28 U.S.C. §2675(a). John Doe #49 has exhausted his administrative remedies.

37. John Doe #49 has also complied with the filing requirements of the West Virginia Medical Professional Liability Act set forth under *W.Va. Code* '55-7B-6.

38. The VA defines Adverse Events as untoward incidents, diagnostic or therapeutic misadventures, iatrogenic injuries, or other occurrences of harm or potential harm directly associated with care or services provided within the jurisdiction of the Veterans Healthcare System. VHA Handbook 1004.08 and VHA Handbook 1050.01.

39. Reporting of adverse events is the primary mechanism through which the Veterans Health Administration National Center for Patient Safety learns about VA system vulnerabilities and how to address them. Through reported adverse events by VA medical facilities, the root causes and contributing factors are identified to prevent future events from reoccurring within the facility. VHA Handbook 1050.01. In short, the adverse event must be reported so it can be investigated, the cause of harm identified, and future harm to patients stopped. VHA Handbook 1050.01.

40. Beckley VAMC supervisory personnel had non-discretionary obligations to identify and report the actions of Dr. Jonathan Yates.

41. The violations of these non-discretionary obligations resulted in the failure to identify system vulnerabilities and failures that were causing patient damages; the failure to identify the root-cause factors contributing to the patient damages; and the failure to prevent future similar damages. The violations of these non-discretionary obligations and duties by Dr. Yates was a continuation of this VAMC's pattern and practice of failing to identify, report and track sentinel

events and failing to perform appropriate root cause analysis investigations to prevent similar future events from reoccurring within the facility.

42. There is an unwavering ethical obligation to disclose to patients harmful Adverse Events that have been sustained during their Department of Veterans Affairs (VA) care. VHA Handbook 1004.08. This obligation to disclose Adverse Events to patients or to the family of patients who have suffered damages from an Adverse Event is a non-discretionary duty imposed on VA hospital physicians and Stacey Vasquez as the Medical Center Director. VHA Handbook 1004.08

43. "Clinicians [physicians] and organizational leaders [Dr. Yates] must work together to ensure that disclosure is a routine part of the response to adverse events." "Honestly discussing the difficult truth that an adverse event has occurred demonstrates respect for the patient and a commitment to improving care." VHA Handbook 1050.01.

44. The explicit intent of the non-discretionary duty to disclose adverse events "is to inform patients about substantive issues related to their care, and not to manage the institution's risk." VHA Handbook 1004.08. "For the patient who is deceased, incapacitated, or otherwise unable to participate in the process of adverse event disclosure, any clinical or institutional disclosure must be communicated to the patient's personal representative". VHA Handbook 1004.08. "Clinical disclosure must be initiated as soon as reasonably possible and generally within 24 hours of occurrence." VHA Handbook 1004.08. "Institutional disclosure must be initiated as soon as reasonably possible and generally within 72 hours." VHA Handbook 1004.08.

45. Because numerous patients made Dr. Yates' conduct known to other members of the Beckley VAMC medical staff, this constituted "a harmful or potentially harmful adverse event which was not an isolated case but rather a systems issue affecting multiple patients", Dr. Yates and

the VA hospital physicians had a non-discretionary duty to initiate the process for Large Scale Disclosure of Adverse Events. VHA Handbook 1004.08.

46. Stacy Vasquez, as the Director of the Beckley VAMC, had a non-discretionary duty to: (1) establish an environment in which senior leaders, including Dr. Yates, "ensure that there is staff understanding of what constitutes an adverse event and that there is a just culture in which VHA program staff, VISN and facility leadership, and facility staff members feel psychologically safe to report such events"; and (2) ensure "that VHA senior leaders establish an environment in which VHA program staff, VISN and facility leadership, and facility staff provide ethically-warranted disclosures to Veterans and/or their personal representative." VHA Handbook 1004.08.

47. Stacy Vasquez and perhaps others, have demonstrated a consistent pattern of violating these non-discretionary duties. The staff of the Beckley VAMC do not feel safe to report Adverse Events and ethically warranted disclosures were not and are not being made to Veterans or their personal representatives.

48. The violations of the non-discretionary obligations by Stacy Vasquez to make adverse event disclosures to the patients who experienced unexpected manipulations and/or violative acts during their appointments at the Whole Health Clinic, resulted in a pattern of violations of patient and family rights; resulted in the perpetuation of such violative acts upon other patients of Dr. Yates and the Whole Health Clinic.

49. Stacey Vasquez, as Medical Center Director, had additional non-discretionary duties to ensure counselors reported the unnecessary manipulations and violative acts committed by Dr. Yates as patients confided of their occurrence. VHA Directive 1070. Stacey Vasquez violated the nondiscretionary duties imposed on her to ensure these unexpected manipulations and

violative acts were reported in compliance with VHA Directive 1070, facility based written procedures, and the facility ADE reporting system.

50. At all times alleged herein, Stacey Vasquez, hospitalist physicians, nursing management, and pharmacy inventory management assumed a non-discretionary special obligation or duty of protective care to John Doe #49 when they accepted him as a hospital patient to protect him against foreseeable injurious acts of third persons, including members of the VAMC staff. This special obligation of protective care also extended to veteran patients who were similarly situated to John Doe #49. This duty was only heightened by the age and physical infirmities of John Doe #49 and other similarly situated veterans. Here, the hospital-patient relationship imposed a special duty on the VAMC to take reasonable precautions to protect patients like John Doe #49 from wrongful conduct by third parties, including VAMC staff, which could have and should have been reasonably anticipated given the events taking place in the Whole Health Clinic and other lax and absent safeguards required and expected in such facilities.

51. The unexpected manipulations and violative acts were a foreseeable consequence of the Defendant's negligence committed by and through its employees as set forth in all the preceding paragraphs.

52. The United States of America, and its agents and employees were negligent and breached the applicable standards of care in caring for and treating John Doe #49 as set forth in all the preceding paragraphs.

53. The United States of America is vicariously liable for the negligence of its employees and agents and it is specifically estopped from denying vicarious liability under principles of employment and agency law.

54. As a direct and proximate result of Defendant's negligence, carelessness, recklessness, incompetent management and supervision, willful lack of care, deviations from the applicable standard of medical care, and violations of non-discretionary duties, protocols, directives and rules, Plaintiff John Doe #49 suffered pain, fear, mental anguish, anxiety, loss of enjoyment of life and all damages allowed under West Virginia Code "55-7-6.

## COUNT I
## NEGLIGENCE

55. John Doe #49 incorporates all prior paragraphs of the Complaint as if full set forth herein verbatim.

56. Dr. Yates owed a duty of care to John Doe #49 to properly evaluate his conditions and to provide him with care which met the standard of care.

57. Dr. Yates owed John Doe #49 a duty of care to adequately explain the osteopathic manipulative treatments to be performed.

58. Dr. Yates owed John Doe #49 a duty of care to perform only those manual medicine treatments which were clearly indicated.

59. Dr. Yates owed John Doe #49 a duty of care to have a chaperone present for and sensitive examinations and osteopathic manipulative treatments.

60. Dr. Yates owed John Doe #49 a duty of care to perform examinations and osteopathic manipulative treatments with regard for John Doe #49's modesty.

61. Dr. Yates breached these standards of care in his treatment of John Doe #49 as set forth herein.

62. As a direct and proximate result of Dr. Yates' breaches of the standard of care as set forth herein, John Doe #49 has suffered injuries and damages including, but not limited to,

medical costs, emotional distress, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss of dignity,

63. Defendant's actions and failures to act with regard to their care of John Doe #49 were so far outside the bounds of reasonable medical care and emergency response, they constitute gross negligence and a willful, wanton, and reckless disregard for the well-being of the patient so that an award of punitive and exemplarily damages is appropriate.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant for:

1. Compensatory damages, past and future;
2. Damages for emotional distress, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss of dignity, past and future;
3. Punitive damages;
4. Attorneys' costs and fees; and
5. All other damages as allowable under West Virginia law.

**JOHN DOE #49 RESPECTFULLY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

         **JOHN DOE #49**
         **BY COUNSEL,**

         /s/ Stephen P. New
         Stephen P. New (#7756)
         Amanda J. Taylor (#49635)
         430 Harper Park Drive
         P.O. Box 5516
         Beckley, WV 25801
         Telephone: (304) 250-6017
         Facsimile: (304) 250-6012